UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BARBARA A. CRIDER,
    Plaintiff

V.

JAMES GOODINE and DEVON LUMBER
CO., LTD.,
    Defendants

CIVIL ACTION NO. 04 12329 NG

## PLAINTIFF, BARBARA A. CRIDER'S MOTION TO COMPEL DEFENDANT, JAMES GOODINE, TO PRODUCE ALL OF THE DOCUMENTS DESCRIBED IN REQUESTS 2, 3, 10, 26, 40, 50, 56 and 63

The plaintiff, Barbara A. Crider ("Crider"), pursuant to the provisions of Rule 37 of the

Federal Rules of Civil Procedure, respectfully requests that this Court enter an Order compelling

the defendant, James Goodine ("Goodine"), to provide Crider with all of the documents

described in Requests 2, 3, 10, 26, 40, 50, 56 and 63 (including but not limited to the twenty-four

documents listed in the Defendants' Privilege Log. See Exhibit A).

## INTRODUCTION

This is a tractor-trailer accident case. Crider sustained serious and permanently disabling

injuries when Goodine negligently crashed a Devon Lumber Company ("Devon") truck into

Crider's car. Crider submits that liability is reasonably clear. In fact, Goodine (a Devon

employee), has already plead guilty to the negligent operation of the truck. Furthermore,

Crider's injuries are significant! Crider's medical bills now exceed $162,000.00 and she

continues to receive ongoing medical treatment.

## PROCEDURAL STATUS

Prior to filing suit, Crider made repeated requests for information about Goodine's insurance policy. Despite repeated demands, Goodine and his insurer refused to provide any information about the policy limits. The insurer maintained that it could not provide any policy information because such a disclosure would constitute an "invasion of privacy." Crider informed the insurer that such policy information is routinely disclosed and that a refusal to provide the policy information would force Crider to file suit against Goodine and Devon. Attached as Exhibit B is a copy of Crider's letter requesting the legal basis for the insurer's refusal to provide the policy information. Unfortunately, the insurer did not respond and Crider filed the Complaint.

After filing the Complaint, Crider served Goodine with Interrogatories and a Request for Production of Documents. Goodine objected to a number of the documents by asserting that they were "protected" because disclosure of the documents would constitute an invasion of Goodine's privacy rights.[1] Goodine also refused to produce other documents based on the work product doctrine and/or the attorney-client privilege. More specifically, Goodine refused to produce (1) a statement made by Goodine to Devon on June 4, 2004 (a mere two days after the accident); and (2) a report and statement made by Goodine to his insurer, Royal & SunAlliance, on June 8, 2004 (less than a week after the crash).

After the parties conducted a telephonic discovery conference, defense counsel provided Crider with a privilege log. A copy of the privilege log is attached as Exhibit A. Crider's counsel has taken the liberty of numbering the documents described in the log (1-24). For twenty-two of the twenty-four documents withheld by the defendants, the defendants maintain

---

[1] Crider maintains that the defendants' pattern of refusing to produce relevant documents based on "privacy" is merely an attempt to stonewall Crider's legitimate requests for relevant and material documentation.

that the sole basis for refusing to produce the documents is that disclosure of the documents might somehow be construed as an invasion of privacy.

## SUMMARY OF ARGUMENT

The law is well settled that a party cannot rely on the confidential nature of documents as a basis for refusing to produce the documents. Privacy or "confidentiality" does not equate to privilege. Stewart v. Mitchell Transport, 2002 WL 1558210 (D. Kan) provides a strikingly similar and compelling precedent. In Stewart, the truck owner refused to produce the driver's complete personnel file because the personnel file contained "private and confidential information" including private medical information. Id. at *5. The Court ordered the trucking company to provide the entire file and noted that the driver's safety record, work history and job performance were all relevant because such documents might reveal that the driver had a history of other accidents or safety violations. Id.

Similarly, in this case, Crider is entitled to all of the documents in Goodine's personnel file as well as any documents related to Goodine's "logbooks" and drug test results. If Goodine had a history of unsafe driving, a history of violating "hours of service" regulations or a history of chronic alcohol or drug use, these facts would provide compelling evidence of Goodine's negligence as well as powerful evidence of Devon's negligence and Devon's negligent entrustment.

In Stewart, the Court noted that if any of the documents were truly "confidential" and if the defendants could show that the disclosure of the confidential information would result in a "clearly defined and very serious injury" then the defendants could request a protective order so that the relevant documents would not be used outside the boundaries of the litigation process. Id. at #5-6. Similarly, if there are any such documents which would cause "clearly defined and

very serious injury" the defendants can seek a protective order. However, the outright refusal to provide specific documents which are relevant and material on "their face" should not be permitted.

WHEREFORE, Crider respectfully requests that this Court enter an order compelling the production of all documents which are responsive to requests 2, 3, 10, 26, 40, 50, 56 and 63 (including but not limited to the twenty-four documents listed in the Defendants' Privilege Log. See Exhibit A).

**ARGUMENT**

A party may obtain discovery of any document which is relevant to the claims or defenses in the case. Fed. R. Civ. P. 26(b)(1). There is no question that the documents requested by Crider are relevant to Crider's negligence claim and her claim for negligent entrustment. As "relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the actions," Crider should be allowed to delve into these highly relevant areas of inquiry. United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 414 (D. Mass. 1995). Surprisingly, for twenty-two of the twenty-four documents, the defendants do not rely on any recognized statutory or common law privilege for their refusal to produce the relevant documents. Instead, the defendants maintain that Goodine's general right to privacy somehow trumps Crider's right to obtain relevant and material documents.

In addition to the twenty-two documents which have been withheld because of "privacy," the defendants have taken the unreasonable position that the other two documents (which were prepared in the usual course of business by Devon and it's insurer) have been magically

transformed into privileged "attorney client" documents simply because Devon sent copies of

these documents to its attorneys after this suit was filed.

### Document Request No. 2

Request No. 2: All documents constituting, commemorating or relating to any statements
or reports given by or on behalf of James Goodine ("Goodine") or any Devon officers, directors,
agents, employees or representatives to any person concerning the incident referred to in the
Complaint.

Response No. 2: Devon objects to this Request to the extent it seeks documents that were
prepared in anticipation of litigation or for trial by Devon and/or its agents and are protected by
the attorney work-product privilege, as well as documents that would disclose the mental
impressions, conclusions, opinions, or legal theories of counsel. Notwithstanding nor waiving
this objection, Devon identifies the following privileged documents in its possession, custody, or
control:

1)   June 4, 2004 statement of James Goodine to Devon; and
2)   June 8, 2004 Automobile Accident Report and statement of James Goodine to
     Royal & SunAlliance.

Argument: As discussed in greater detail below, the June 4th statement and the June 8th

statement[2] do not contain any attorney/client conversations. Furthermore, the two statements

were taken as part of the normal investigative process rather than specifically for litigation

purposes. As a result, neither statement enjoys a privilege and therefore should be produced.

### A.    The June 4, 2004 Statement of James Goodine to Devon

The work product doctrine is designed to protect "written statements, private memoranda

and personal recollections prepared or formed by an adverse party's counsel in the course of his

legal duties." Hickman v. Taylor, 329 U.S. 495, 510 (1947). In order to be immune from

discovery pursuant to the work-product doctrine, materials must be (1) documents and tangible

things, (2) prepared in anticipation of litigation or for trial, and (2) by or for another party or by

---

[2] These documents are identified as documents 14 and 15 in the attached privilege log. (Exhibit A)

or for that other party's representative.  See Wright, Miller and Marcus, Federal Practice and Procedure, Civil 2d, § 2024.

"Because work product protection…hinders the investigation of truth by cloaking otherwise relevant information, its scope should be given the narrowest construction consistent with its purpose." Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Co., 123 F.R.D. 198, 201 (M.D.N.C. 1988).  The party resisting discovery has the burden to demonstrate that the materials sought are indeed work product within the meaning of Fed. R. Civ. P. 26(b)(3). Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 605 (D. Mass 1992).

Crider's research indicates that the District of Massachusetts employs a case-by-case analysis to determine whether witness statements taken immediately after an accident by a defendant's employer or a defendant's insurer constitute documents made in "anticipation of litigation." Pasteris v. Robillard, 121 F.R.D. 18, 20 (D. Mass. 1988).  The court must determine whether the prospect of litigation was the "primary motivating purpose" behind the creation of a particular document.  City of Worcester v. HCA Management Co., Inc., 839 F. Supp. 86, 88 (D. Mass. 1993).  Materials compiled in the ordinary course of business, pursuant to regulatory requirements or for other non-litigation purposes are not protected by the work product doctrine. Fairbanks v. American Can. Co., Inc., 110 F.R.D. 685, 687 (D. Mass. 1992).

"IF IN CONNECTION WITH AN ACCIDENT OR AN EVENT, A BUSINESS ENTITY IN THE ORDINARY COURSE OF BUSINESS CONDUCTS AN INVESTIGATION FOR ITS OWN PURPOSES, THE RESULTING INVESTIGATIVE REPORT IS PRODUCEABLE IN CIVIL PRE-TRIAL DISCOVERY." Binks Manufacturing Co. v. Nat'l Presto Industries, Inc., 709 F.2d 1109, 1119 (7th Cir. 1983).  "THE FACT THAT A DEFENDANT ANTICIPATES THE CONTINGENCY OF LITIGATION RESULTING FROM

AN ACCIDENT OR EVENT DOES NOT AUTOMATICALLY QUALIFY AN "IN HOUSE" REPORT AS WORK PRODUCT." <u>Janicker v. George Washington University</u>, 94 F.R.D. 648, 650 (D.D.C. 1982).

In this case, the June 4, 2004 statement was made just two days after the accident. Clearly, the statement was taken in the ordinary course of Devon's business in the investigation of a traffic accident which caused damage to one of its trucks and involved one of its employees. As such, the statement is not protected by the work product doctrine.

Likewise, the claim of attorney-client privilege is inappropriate as this statement was not made as a communication to an attorney, nor was it created in an attempt to seek legal advice. In order to assert the attorney-client privilege, the defendant must show the following: (1) that an attorney was sought, (2) that the attorney acted as an attorney, (3) that communication with the attorney was made for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding <u>and</u>, (4) there was no waiver of the privilege. <u>United States v. Wilson</u>, 798 F.2d 509, 512 (1st Cir. 1986). See also <u>Pasteris v. Robillard</u>, 121 F.R.D. 18, 21 (D. Mass. 1988) citing <u>United States v. United Shoe Machinery Corp.</u>, 89 F. Supp. 357, 358 (D. Mass. 1950) ("The privilege applies only if the person to whom the communication was made is a member of the bar of a court, or his subordinate, and in connection with this communication is acting as a lawyer."). Goodine does not claim that Goodine's statement was made to an attorney and Goodine has not shown that any attorney had been contacted at the time the statement was taken.

Further, the law of privileges does not extend to facts known by a party's attorney, but only to the actual communications between the party and his attorney. <u>See Upjohn Co. v. United States</u>, 449 U.S. 383, 396 (1980). Thus, simply because Goodine's attorneys are now aware of the substance of the statement, and may in fact be in possession of the statement, does not protect

it from discovery. The statement is not protected by the attorney-client privilege and it should be produced.

**B.    The June 8, 2004 Automobile Accident Report and Statement by James Goodine to Royal & SunAlliance.**

Just as the statement by Goodine to Devon is <u>not</u> protected by any privilege, the statement and accident report given by Goodine to Royal & SunAlliance should be produced. The statement and report were prepared by Royal & SunAlliance on June 8, 2004 (less than a week after the accident.) The statement and report were not taken in anticipation of litigation, but were prepared in the ordinary course of business.

AN INSURANCE COMPANY HAS A DUTY, IN THE ORDINARY COURSE OF BUSINESS, TO INVESTIGATE AND EVALUATE CLAIMS. AS A RESULT, CLAIM FILES CREATED IN THE ORDINARY COURSE ARE GENERALLY <u>NOT</u> ENTITLED TO WORK PRODUCT PROTECTION. <u>Rinaldi</u>, 123 F.R.D. at 202. <u>See also</u> <u>Sham v. Hyannis Heritage House Hotel, Inc.</u>, 118 F.R.D. 24, 25 (D. Mass. 1987) (AN INVESTIGATION INTO AN ACCIDENT IS MADE IN THE ORDINARY COURSE OF AN INSURERS BUSINESS AND IS NOT WORK PRODUCT); <u>Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.</u>, 160 F.R.D. 83, 85 (S.D.W.Va. 1994) ("IT IS THE VERY NATURE OF AN INSURER'S BUSINESS TO INVESTIGATE AND EVALUATE THE MERIT OF CLAIMS."). AS A RESULT, THE STATEMENT AND REPORT TAKEN OF GOODINE BY ROYAL & SUNALLIANCE WERE CREATED IN THE ORDINARY COURSE OF ITS BUSINESS AND ARE NOT ENTITLED TO ANY IMMUNITY UNDER THE WORK PRODUCT DOCTRINE.

Moreover, as there has been no suggestion of the involvement of an attorney in the taking of this statement and the creation of the accident report, the suggestion of an attorney-client

privilege is inappropriate. As a result, the statement and report given by Goodine to Royal &

SunAlliance should be produced.[3]

### Document Request No. 3

Request No. 3: All documents constituting, commemorating or relating to any accident reports and/or incident reports prepared by or on behalf of Goodine and/or any Devon officers, directors, agents, employees or representatives in any way related to the incident referred to in the Complaint.

Response No. 3: Devon objects to this Request to the extent it seeks documents that were prepared in anticipation of litigation or for trial by Devon and/or its agents and are protected by the attorney work-product privilege, as well as documents that would disclose the mental impressions, conclusions, opinions, or legal theories of counsel. Notwithstanding nor waiving this objection, Devon identifies the following privileged documents in its possession, custody, or control:

1)    June 4, 2004 statement of James Goodine to Devon; and
2)    June 8, 2004 Automobile Accident Report and statement of James Goodine to Royal & Sunalliance.

Argument: See Argument set forth in connection with Request No. 2.

### Document Request No. 10

Request No. 10: All documents constituting, commemorating or relating to Goodine's personnel file at Devon.

Response No. 10: Devon objects to this Request as it seeks confidential records containing highly sensitive and personal information, disclosure of which would invade the privacy rights of its employee, James Goodine. Devon also objects on the grounds that it is overly broad and not properly limited in scope, and seeks documents that are irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding nor waiving these objections, and subject to the General Objections specifically incorporated herein, Devon refers Plaintiff to the following personnel records attached as Exhibit 4:

---

[3] If this Court determines that the statements and report are privileged as "work product," Crider reserves the right to file a motion to compel production based on the undue hardship/substantial need exception contained in Rule 26 in the event that subsequent depositions and other discovery responses reveal that Crider is unable, without undue hardship, to obtain the substantial equivalent of these documents. Courts are particularly receptive to a substantial need argument to overcome work product protection where the documents at issue are contemporaneous statements made immediately after an accident. "Because memory fades with time or changes after further reflection, contemporaneous statements have been deemed a unique catalyst in the search for truth." Suggs v. Whitaker 152 F.R.D. 501, 507 (M.D.N.C. 1993).

Case 1:04-cv-12329-NG    Document 10    Filed 01/09/2006    Page 10 of 23

1)   Application for Employment;
2)   Qualifications for Full Time Employment;
3)   Driver's License;
4)   Inspection Report Dated February 14, 2005;
5)   Inspection Report Dated August 9, 2004; and
6)   Letter from Devon to James Goodine regarding the June 2, 2004 accident.

Argument: Crider has requested copies of all documents in Goodine's personnel file to support her claim against Goodine and Devon for negligence and negligent entrustment of the tractor-trailer. It is imperative that Crider be given the opportunity to gain a full understanding of what Devon knew about Goodine's character, fitness for the job, driving ability, and driving record prior to the June 2, 2004 crash. See Stewart, 2002 WL 1558210, *4. (In an action against a truck-driver and a trucking company for negligence, a request for the complete personnel file was relevant on its face.) There can be no question that the documents in Goodine's personnel file will shed a great deal of light on what Devon knew (or should have known) about Goodine prior to entrusting him with the operation of a tractor-trailer. While the defendants have produced some documents, the documents disclosed do not go far enough to gain a full understanding of Devon's knowledge of Goodine's education, training, prior employment, driving history and driving ability. The entire personnel file should be produced. The documents listed in the attached privilege log are employment records which should be contained in Goodine's personnel file. Therefore, Crider respectfully requests that this Court order Goodine to produce all of the documents in his personnel file, driver qualification file, as well as the following documents identified in the privilege log – Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23 and 24.

### Document Request No. 26

Request No. 26: A list of any and all arrests and/or convictions of Goodine.

{H:\PA\Li\i\19444\00001\A0872142.DOC}                10

Response No. 26: OBJECTION: The defendant objects to this request on the grounds that it seeks documents that would constitute an invasion of the defendant's right to privacy. The defendant also objects on the grounds that it is not properly limited in time and scope, and seeks documents that are irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

Argument: Evidence of convictions may be admissible for impeachment purposes. Rule 609 of the Federal Rules of Evidence provides that a party may introduce evidence that a witness has been convicted of any crime punishable by death or imprisonment in excess of one-year or any crime, regardless of the punishment, that involved dishonesty or a false statement. Fed. R. Evid. 609(a). Evidence of convictions are admissible for a period of 10 years after the date of release from incarceration or from the date of conviction, whichever is later. Fed. R. Evid. 609(b). As a result, an inquiry into past arrests and convictions is reasonably calculated to lead to the discovery of highly relevant and admissible evidence. Furthermore, if Goodine has prior convictions related to the operation of a motor vehicle, such evidence is relevant to Crider's charge of negligence and negligent entrustment against Devon. See Minter v. Great American Ins. Co. of N.Y., 423 F.3d 460, 469 (5th Cir. 2005) (In light of driver's record containing offenses related to alcohol and drugs, lessee's failure to obtain record was relevant in charges against employer.) Furthermore, Goodine is not a citizen of the United States and Crider has no other practical way of obtaining the relevant information.

### Document Request No. 40

Request No. 40: Requests of any and all drug and/or alcohol tests administered to Goodine during the five years prior to the occurrence and immediately after the occurrence.

Response No. 40: OBJECTION: The defendant objects to this request on the grounds that it seeks documents that would constitute an invasion of the defendant's right to privacy. The defendant also objects on the grounds that it is overly broad and not properly limited in time, and seeks documents that are irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

Argument: Crider seeks the results of drug or alcohol tests performed on Goodine prior

to the accident on June 2, 2004 and immediately after the accident. It is clearly relevant to

Crider's case against Devon to know if Devon had any reason to know that Goodine had a

history of any prior alcohol abuse or drug use. See Minter, 423 F.3d at 469.

## Document Request No. 50

Request No. 50: All documents constituting, commemorating or relating to any alcohol
tests or drug tests performed on Goodine as a result of the incident described in the Complaint.

Response No. 50: OBJECTION: The defendant objects to this request on the grounds that
it seeks documents that would constitute an invasion of the defendant's right to privacy.

Argument: Crider seeks the results of any drug or alcohol tests performed on Goodine

after the accident on June 2, 2004. It is clearly relevant to Crider's case against Goodine to know

if Goodine was using any drugs or other substances which may have impaired his ability to

safely operate a tractor-trailer truck at the time of his accident. In truck accident cases the results

of the driver's drug tests should be produced without objection. See Casey v. Ryder Truck

Rental, 2005 WL 1150228, *1 (E.D.N.Y.).

## Document Request No. 56

Request No. 56: All documents constituting, commemorating or relating to any log audits
performed on Goodine's log books.

Response No. 56: OBJECTION: The defendant objects to this request on the grounds that
it seeks documents that would constitute an invasion of the defendant's right to privacy.

Argument: Crider should be allowed to examine all logbooks and audits to determine if

Goodine had violated any Canadian or Federal "Hours of Service" regulations. It is also highly

relevant to know whether Goodine had a habit of not accurately recording the number of hours

he drove, falsifying the number of hours he drove, or if he had a history of hours of service

violations. It is imperative to Crider's case to be allowed to determine the likelihood that

Goodine's records of his driving are accurate and to what extent Devon may have known or should have known that his record of hours driven were likely inaccurate.

Now that the defendants have produced a privilege log, Crider knows that Devon has refused to produce fifteen different documents specifically related to Goodine's driving history. Documents numbered 4, 5, 6, 10, 11, 12, 13, 16, 17, 18, 19, 21, 22, 23 and 24 are all directly related to Goodine's logbooks and "examinations" of his logbooks. Federal Law requires every truck driver to maintain a logbook and these logbooks must be produced for inspection. To assert that a contemporaneous record of Goodine's trip on the day of the accident is somehow "private" is disingenuous. Goodine was required by law to maintain a logbook and the logbooks must be available for inspection. Further, logbooks are customarily introduced at trial to show that a truck driver had violated an "hours of service" regulation designed to protect the public from the "tired trucker." See Posner v. Paul's Trucking Service 380 F.2d 757, 759 (1st Cir. 1967). It is well known that truck driver fatigue is a major safety problem. Some studies, including two by the National Transportation Safety Board, indicate that truck driver fatigue is a factor in thirty to forty percent of severe crashes.[4] Crider should be allowed to inspect the logbooks to determine Goodine's "hours of service," hours of sleep, distances traveled and the speed of the truck. The defendants should be ordered to produce the logbook as well as any reports detailing any exams, inspections or audits of the logbooks.

### Document Request No. 63

Request No. 63: All Devon records and/or motor carrier records related to Goodine, included but not limited to:

a. All documents to qualify a driver (49CFR391.11);
b. Disqualification record (49CFR391.15);
c. Driver application (49CFR391.21);

---

[4] Baker, Recent Court Cases Raise Questions About Trucking Safety, Fort Worth Star Telegram (Dec. 30, 2005).

    d.      Investigation and inquiries into driver (49CFR391.23);
    e.      Annual review records (49CFR391.25);
    f.      Driver violations-review (49CFR391.27);
    g.      Driver road test (49CFR391.37);
    h.      Driver written test (49CFR391.35);
    i.      Driver's physical exam (long form) (49CFR391.43);
    j.      Driver's records of duty (49CFR391.8).

Response No. 63: OBJECTION: The defendant objects to this request on the grounds that it seeks documents that would constitute an invasion of the defendant's right to privacy. The defendant also objects on the grounds that it is overly broad and not properly limited in time, and seeks documents that are irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

Argument: The defendant's objection that the request is overly broad and not limited in time is disingenuous. Obviously, Crider merely seeks to obtain those documents currently in Gooodine's personnel file or in other files at Devon's offices. Furthermore, Goodine's privacy claim is without merit. The law is well settled that a party cannot rely on the confidential nature of documents as a basis for refusing to produce the documents. Privacy or "confidentiality" does not equate to privilege. Stewart v. Mitchell Transport, 2002 WL 1558210 (D. Kan) provides a strikingly similar and compelling precedent. In Stewart, the truck owner refused to produce the driver's complete personnel file because the personnel file contained "private and confidential information" including private medical information. Id. at *5. The Court ordered the trucking company to provide the entire file and noted that the driver's safety record, work history and job performance were all relevant because such documents might reveal that the driver had a history of other accidents or safety violations. Id.

Similarly, in this case, Crider is entitled to all of the documents in Goodine's personnel file as well as any documents related to Goodine's "logbooks" and drug test results. If Goodine had a history of unsafe driving, a history of violating "hours of service" regulations or a history of chronic alcohol or drug use, these facts would provide compelling evidence of Goodine's

negligence as well as powerful evidence of Devon's negligence and Devon's negligent entrustment.

In <u>Stewart</u>, the Court noted that if any of the documents were truly "confidential" and if the defendants could show that the disclosure of the confidential information would result in a "clearly defined and very serious injury" then the defendants could request a protective order so that the relevant documents would not be used outside the boundaries of the litigation process. <u>Id</u>. at #5-6. Similarly, if there are any such documents which would cause "clearly defined and very serious injury" the defendants can seek a protective order. However, the outright refusal to provide specific documents which are relevant and material on "their face" should not be permitted.

WHEREFORE, Crider hereby requests that this Court enter an Order compelling the defendant, Goodine, to provide responsive documents in response to Requests 2, 3, 10, 26, 40, 50, 56 and 63 (including but not limited to the twenty-four documents listed in the Defendants' Privilege Log.  See <u>Exhibit A</u>).

BARBARA A. CRIDER

By her attorney,


/s/ Edward C. Bassett, Jr.
Edward C. Bassett, Jr., Esq.
BBO #033060
ecbassett@modl.com
James A. Wingfield, Esq.
BBO #657561
jawingfield@modl.com
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Westborough, MA 01581-3941
Phone: (508) 898-1501
Fax:    (508) 898-1502

Dated: January 9, 2006


## LOCAL RULE 26.2(c) CERTIFICATE

I, Edward C. Bassett, Jr., Esq., hereby certify that on September 6, 2005, November 3, 2005, November 22, 2005 and December 21, 2005 I communicated with Jacy L. Wilson, Esq. and I have also had a telephone conference with Thomas Federico, Esq. in a good faith effort to narrow the areas of disagreement to the fullest extent prior to filing this Motion to Compel.

/s/ Edward C. Bassett, Jr.
Edward C. Bassett, Jr., Esq.

Dated: January 9, 2006


## CERTIFICATE OF SERVICE

I, Edward C. Bassett, Jr., Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 9, 2006.

/s/ Edward C. Bassett, Jr.
Edward C. Bassett, Jr., Esq.

Dated: January 9, 2006

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO:  04 12329 NG

```
                                    )
BARBARA A. CRIDER,                  )
Plaintiff,                          )
                                    )
v.                                  )
                                    )
JAMES  GOODINE and DEVON LUMBER)
CO., LTD.,                          )
Defendants.                         )
                                    )
                                    )
```

## PRIVILEGE LOG

| | DATE | DESCRIPTION | PAGES | REASON WITHHELD |
|---|---|---|---|---|
| 1 | 5/15/03 | Department of Public Safety Abstract of Driving Record | 1 | Invasion of privacy. |
| 2 | 7/9/03 | Email to Helen Hogenhout of Devon Lumber Co., Ltd. from Natalie Roy of Health Star Enterprises Corporation regarding pre-employment test result for specimen collected 7/8/093. | 1 | Invasion of privacy. |
| 3 | 7/10/03 | Federal Drug Testing Custody and Control Form | 1 | Invasion of privacy. |
| 4 | 9/18/03 | Letter from Devon Lumber Co. Ltd. to James Goodine regarding Log Book Examination. | 1 | Invasion of privacy. |
| 5 | 10/12/03 | Letter to Helen Hogenhout from PWF Transportation Services regarding September Log Book Examination. | 2 | Invasion of privacy. |
| 6 | 10/17/03 | Letter from Devon Lumber Co. Ltd. to James Goodine regarding Log Book Examination. | 1 | Invasion of privacy. |
| 7 | 3/11/04 | Email to Helen Hogenhout of Devon Lumber Co., Ltd. from Lisa Tisdel of Health Star | 1 | Invasion of privacy. |

962682v1

|  |  | Enterprises Corporation regarding pre-employment test result for specimen collected 3/6/04. |  |  |
|---|---|---|---|---|
| 8 | 3/12/04 | Federal Drug Testing Custody and Control Form | 1 | Invasion of privacy. |
| 9 | 3/30/04 | Department of Public Safety Medical Fitness Report | 1 | Invasion of privacy. |
| 10 | 4/14/04 | Letter to Helen Hogenhout from PWF Transportation Services regarding March Log Book Examination. | 2 | Invasion of privacy. |
| 11 | 4/20/04 | Letter from Devon Lumber Co. Ltd. to James Goodine regarding Log Book Examination. | 1 | Invasion of privacy. |
| 12 | 5/13/04 | Letter to Helen Hogenhout from PWF Transportation Services regarding April Log Book Examination. | 2 | Invasion of privacy. |
| 13 | 5/17/04 | Letter from Devon Lumber Co. Ltd. to James Goodine regarding Log Book Examination. | 1 | Invasion of privacy. |
| 14 | 6/4/04 | Statement of James Goodine to Devon Lumber Co., Ltd. | 1 | Work product; prepared in anticipation of litigation or for trial; disclosure of the mental impressions of counsel. |
| 15 | 6/8/04 | Automobile Accident Report and Statement of James Goodine to Royal & SunAlliance | 6 | Work product; prepared in anticipation of litigation or for trial; disclosure of the mental impressions of counsel. |
| 16 | 8/19/04 | Letter to Helen Hogenhout from PWF Transportation Services regarding July Log Book Examination. | 2 | Invasion of Privacy. |
| 17 | 8/25/04 | Letter from Devon Lumber Co. Ltd. to James Goodine regarding Log Book Examination. | 1 | Invasion of privacy. |
| 18 | 12/20/04 | Letter to Helen Hogenhout from PWF Transportation Services regarding November Log Book Examination. | 2 | Invasion of privacy. |
| 19 | 1/5/05 | Letter from Devon Lumber Co. Ltd. to James Goodine | 1 | Invasion of privacy. |

| | | | |
|---|---|---|---|
| | regarding Log Book Examination. | | |
| 6/15/05 | Department of Public Safety Abstract of Driving Record | 1 | Invasion of privacy. |
| January (year unspecified) | PFW Transportation Services log sheet pertaining to James Goodine of Devon Lumber Co., Ltd. | 2 | Invasion of privacy. |
| February (year unspecified) | PFW Transportation Services log sheet pertaining to James Goodine of Devon Lumber Co., Ltd. | 2 | Invasion of privacy. |
| March (year unspecified) | PFW Transportation Services log sheet pertaining to James Goodine of Devon Lumber Co., Ltd. | 2 | Invasion of privacy. |
| November (year unspecified) | PFW Transportation Services log sheet pertaining to James Goodine of Devon Lumber Co., Ltd. | 2 | Invasion of privacy. |

In setting forth the above privilege log, defendants James Goodine and Devon Lumber Co., Ltd. reserve the right to list and withhold further documents and to set forth additional privileges to those documents listed above or not so listed. In producing any documents covered by any privilege, James Goodine and Devon Lumber Co., Ltd. do not waive any such privileges.

The following categories of documents are <u>not</u> specifically included in the privilege log, but have also been withheld from discovery and will continue to be so withheld without producing any specific privilege log for such documents:

1.      Any and all communications between counsel and James Goodine and/or Devon Lumber Co., Ltd., including their insurers; and

2.    Any and all communications between counsel and James Goodine and/or Devon Lumber

Co., Ltd., or their insurers <u>and</u> any experts or other consultants retained by them.

The Defendants,
James Goodine and Devon Lumber Co., Ltd.
By their attorneys,


_Tracy L. Wilson_
Thomas C. Federico, BBO #160830
Jacy L. Wilson, BBO #658923
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500


Dated: _December 21, 2005_

# EXHIBIT B



## MIRICK O'CONNELL
### ATTORNEYS AT LAW
MIRICK. O'CONNELL. DEMALLIE & LOUGEE, LLP

July 15, 2004

**VIA FAX**

Christine Starcevic
Royal & SunAlliance
Sheridan Centre
2225 Erin Mills Parkway
Suite 1000
Mississauga, Ontario L5K 259
CANADA

Re:  Barbara A. Crider
     Your Insured:  Devon Lumber Co., LTD
     Claim No.:  RC986673/040001
     Date of Accident:  6/2/04

Dear Ms. Starcevic:

I have retained expert insurance counsel from Canada who informs me that the Canadian Courts have never interpreted any of the past or current privacy laws to prevent disclosure of policy limits.  Therefore, please fax me a copy of any case law supporting your position.  If there is no case law, please provide me with the specific section of the statute which you rely on for your refusal to disclose the policy limits.

Very truly yours,

Edward C. Bassett, Jr.

ECB/js



WORCESTER. MA 01608-1477
508-791-8500 • FAX 508-791-8502

1700 WEST PARK DRIVE
WESTBOROUGH. MA 01581-3941
508-898-1501 • FAX 508-898-1502

BOSTON. MA 02110-1263
617-261-2417 • FAX 617-261-2418

{H:\PA\Lit\19444\00001\A0723172.DOC}